## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

GHAKARHI B.,                          :
                                      :
         Plaintiff,                   :
                                      :          CIVIL ACTION NO.
         v.                           :          1:21-cv-01382-RGV
                                      :
COMMISSIONER, SOCIAL                  :
SECURITY ADMINISTRATION,              :
                                      :
         Defendant.                   :

## FINAL ORDER

This is an action to review the determination by the Commissioner of Social Security ("the Commissioner") that claimant Ghakarhi B. ("claimant") is not entitled to a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433. For the reasons that follow, the Commissioner's decision denying claimant's application for DIB is **AFFIRMED**.[1]

---

[1] The parties have consented to have a magistrate judge conduct any and all proceedings, including the entry of final judgment. <u>See</u> [Docket entries dated 04/21/2021].

# I. PROCEDURAL HISTORY

Claimant, who was born on June 25, 1960, graduated high school, and has past relevant work experience as a project manager, protectively filed an application for DIB on March 28, 2016,[2] alleging an onset of disability as of October 23, 2013, due to kidney cancer, narcolepsy, sleep apnea, diabetes, post-traumatic stress disorder ("PTSD"), asthma, and high blood pressure. (Tr.[3] at 28, 154-55, 185, 374-77, 418-23). Claimant's application was denied initially and on reconsideration, (Tr. at 154-81, 214-25), and he then requested a hearing before an Administrative Law Judge ("ALJ"), (Tr. at 226-42), which was held before ALJ McArthur Allen ("ALJ Allen") on July 18, 2018, (Tr. at 109-53). On September 13, 2018, ALJ Allen issued a decision, denying claimant's DIB application upon finding that he had not been under a "disability" as defined by the Act because he

---

[2] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." Walker v. Astrue, Civil Action File No. 1:12–CV–2586–TWT, 2013 WL 5354213, at *2 n.1 (N.D. Ga. Sept. 24, 2013) (citation and internal marks omitted), adopted at *1. "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." Id. (citation and internal marks omitted).

[3] See [Doc. 13] and its attachments for the electronic Certified Administrative Record ("eCAR"), hereinafter referred to as ("Tr. at __"). With the exception of the eCAR, which is cited according to the actual transcript page number shown on the bottom right corner of the record, the cited document and page numbers in this Final Order refer to the document and page numbers shown on the Adobe file reader linked to this Court's electronic filing database (CM/ECF).

did not have an impairment or combination of impairments that meets or medically equals the severity of the one of listed impairments, he had the residual functional capacity ("RFC") to perform sedentary work, and was capable of performing past relevant work as a Project Manager.  (Tr. 182-205).

Claimant sought review by the Appeals Council.  See (Tr. at 286-92).  On September 13, 2019, the Appeals Council remanded the case: (1) for the ALJ to give further consideration of claimant's RFC during the entire period at issue and to provide a rationale with specific references to evidence of record in support of the expressed limitations; and (2) to request that claimant's treating physician and other medical sources provide additional evidence and further clarification of medical opinions and statements concerning claimant's impairments and limitations.  (Tr. at 206-08 (citations omitted)).

The rehearing was held before ALJ Curtis Boren ("ALJ Boren" or "the ALJ") on May 1, 2020, at which claimant was represented by an attorney and a vocational expert ("VE") testified.[4]  (Tr. at 80-107).  On May 14, 2020, ALJ Boren issued a decision denying claimant's DIB application upon finding that he had not been under a "disability" as defined by the Act from October 23, 2013, through the date

---

[4] James Newton testified as VE at the May 2020 administrative hearing.  See (Tr. at 80-81, 97-105); see also (Tr. at 500-507 (VE's resume)).

of his decision.  (Tr. at 13-37).[5]  ALJ Boren determined that claimant had the severe

impairments of diabetes mellitus, obesity, asthma, and osteoarthritis of the left

shoulder, as well as the non-severe impairments of history of renal cell carcinoma,

chronic kidney disease, hypertension, hyperlipidemia, obstructive sleep apnea,

cellulitis in the left lower extremity, cataracts, major depressive disorder, and

PTSD, but that he did not have an impairment or combination of impairments that

met or medically equaled the severity of one of the listed impairments.  (Tr. at 19-

22 (citations omitted)).  ALJ Boren concluded that claimant had the RFC to perform

light work as defined in 20 C.F.R. § 404.1567(b), with the following additional

limitations:  occasional climbing of ramps and stairs, balancing, stooping,

kneeling, crouching, and crawling; no climbing of ladders, ropes, or scaffolds;

frequent reaching overhead with the left upper extremity; no concentrated

exposure to pulmonary irritants such as fumes, odors, dusts, gases; and no

concentrated exposure to workplace hazards, including hazardous machinery and

unprotected heights, and that, based on the VE's testimony at the administrative

---

[5] ALJ Boren also determined that claimant met the insured status requirements of the Act through December 31, 2020.  (Tr. at 16, 18).  "To be eligible for [DIB], a claimant must demonstrate a disability on or before the last date on which []he was insured."  Castleman v. Comm'r, Soc. Sec. Admin., 824 F. App'x 927, 927 (11th Cir. 2020) (per curiam) (unpublished) (citations omitted); see also (Tr. at 16-17).

hearing, he was capable of performing his past relevant work as a project manager.

(Tr. 22, 27-28).

On July 6, 2020, claimant sought review by the Appeals Council, which was denied on February 10, 2021,[6] making ALJ Boren's decision the final decision of the Commissioner.[7]  (Tr. at 1-7, 371-73).  Claimant appealed the decision to the

---

[6] Claimant submitted additional evidence to the Appeals Council, which the Appeals Council found did not "show a reasonable probability that it would change the outcome of the decision" and therefore "did not exhibit" it.  (Tr. at 2); see also (Tr. at 38-78).

[7] The Commissioner published final rules entitled, "Revisions to Rules Regarding the Evaluation of Medical Evidence; Correction," on January 18, 2017, which became effective as of March 27, 2017.  See 82 FR 15132-01, 2017 WL 1105368 (Mar. 27, 2017).  "Some of the new rules apply only to applications/claims filed before March 27, 2017, and others apply only to applications/claims filed on or after March 27, 2017."  Christensen v. Saul, DOCKET NO. 1:19cv68-MOC, 2019 WL 6359764, at *2 n.1 (W.D.N.C. Nov. 27, 2019) (citation omitted) (citing 20 C.F.R. § 404.1527 ("explaining how an adjudicator considers medical opinions for claims filed before March 27, 2017") and 20 C.F.R. § 404.1520c ("explaining how an adjudicator considers medical opinions for claims filed on or after March 27, 2017")).  In this case, since the agency's final decision was issued "after the effective date of the final rules, but [claimant] filed his claim before March 27, 2017," id., all references in this Final Order are to the prior versions of the Regulations which were in effect at the time claimant's application for benefits was filed, unless otherwise specified, see Richardson v. Saul, CIVIL ACTION NO. 2:18-00468-N, 2020 WL 1276102, at *7 n.13 (S.D. Ala. Mar. 17, 2020) (alteration and internal marks omitted) (explaining that unless otherwise specified, that for "claim(s) filed before March 27, 2017, adjudicators must use the prior rules throughout the entire appeals process"); Dement v. Berryhill, Civil Action No. 2:16cv222-WC, 2017 WL 1405165, at *7 n.8 (M.D. Ala. Apr. 19, 2017) (explaining that when "before the ALJ on remand, the ALJ should apply the [R]egulations as they were in force at the time [claimant's] claim was filed").

district court seeking review of the Commissioner's decision.  [Docs. 1 & 6].  The relevant details of claimant's medical history and the evidence in the record will be set forth as necessary during the discussion of the issues raised by claimant. Thus, the matter is now before the Court upon the administrative record and the parties' briefs, [Docs. 13, 18, 21, & 23], and is ripe for review pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A); see also Jones v. Comm'r of Soc. Sec., 478 F. App'x 610, 611 (11th Cir. 2012) (per curiam) (unpublished) (citation omitted); Majkut v. Comm'r of Soc. Sec., 394 F. App'x 660, 662 (11th Cir. 2010) (per curiam) (unpublished) (citations omitted).[8]  The impairment or impairments must

_____

[8] "The relevant law and regulations governing the determination of disability under a claim for DIB are nearly identical to those governing the determination under a claim for [supplemental security income ('SSI')]," and the "legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a 'period of disability,' or to recover SSI."  Bailey v. Astrue, 739 F. Supp. 2d 1365, 1367 n.2 (N.D. Ga. 2010) (citation omitted); see also Duthie v. Astrue, Civil Action No. 11–0291–N, 2012 WL 2505920, at *2 (S.D. Ala. June 28, 2012) (citation omitted).

result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)-(3); D'Andrea v. Comm'r of Soc. Sec. Admin., 389 F. App'x 944, 946 (11th Cir. 2010) (per curiam) (unpublished) (citation omitted).

"The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner." Gibson v. Astrue, Civil Action File No. 1:09-CV-677-AJB, 2010 WL 3655857, at *7 (N.D. Ga. Sept. 13, 2010). "The claimant bears the primary burden of establishing the existence of a 'disability' and therefore entitlement to disability benefits." Id. (citing 20 C.F.R. § 404.1512(a)); see also Symonds v. Astrue, 448 F. App'x 10, 11 (11th Cir. 2011) (per curiam) (unpublished) (citation omitted). The Commissioner utilizes a five-step sequential analysis to determine whether claimant has met the burden of proving disability. Tisdale v. Soc. Sec. Admin., Comm'r, 806 F. App'x 704, 706 (11th Cir. 2020) (per curiam) (unpublished) (citations omitted); Manzo v. Comm'r of Soc. Sec., 408 F. App'x 265, 266 (11th Cir. 2011) (per curiam) (unpublished) (citations omitted); Doughty v.

Thus, "to the extent the Court cites to SSI cases, statutes, or [R]egulations, they are equally applicable to [claimant's] DIB claims." Bailey, 739 F. Supp. 2d at 1367 n.2.

Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citations omitted); 20 C.F.R. §
404.1520(a)(4).

Claimant must prove at step one that he is not undertaking substantial
gainful activity.  See Manzo, 408 F. App'x at 266 (citations omitted); 20 C.F.R. §
404.1520(a)(4)(i).  At step two, claimant must prove that he is suffering from a
severe impairment or combination of impairments which significantly limits his
ability to perform basic work-related activities.  See Manzo, 408 F. App'x at 266
(citations omitted); 20 C.F.R. § 404.1520(a)(4)(ii).  At step three, if the impairment
meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing
of Impairments), claimant will be considered disabled without consideration of
age, education, and work experience.  See Salazar v. Comm'r of Soc. Sec., 372 F.
App'x 64, 66 (11th Cir. 2010) (per curiam) (unpublished) (citation omitted); 20
C.F.R. § 404.1520(a)(4)(iii).  At step four, if claimant is unable to prove the existence
of a listed impairment, he must prove that the impairment prevents performance
of past relevant work.  See D'Andrea, 389 F. App'x at 945 (citation omitted); 20
C.F.R. § 404.1520(a)(4)(iv).[9]  At step five, the Regulations direct the Commissioner

---

[9] "A claimant's RFC is assessed between steps three and four of the sequential
analysis, and is a determination of his . . . remaining ability to engage in work
despite impairments." White v. Comm'r of Soc. Sec., CASE NO. 3:18-CV-61-MSH,
2018 WL 6683004, at *3 (M.D. Ga. Dec. 19, 2018).  "It is the most that a claimant can
do despite being impaired."  Id. (citation omitted).

to consider claimant's RFC, age, education, and past work experience to determine whether claimant can perform other work besides past relevant work.  See Manzo, 408 F. App'x at 267 (citations omitted); 20 C.F.R. § 404.1520(a)(4)(v).[10]  "The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform."  Holmes v. Astrue, Civil Action File No. 1:09–CV–01523–AJB, 2010 WL 2196600, at *12 (N.D. Ga. May 27, 2010).  To be considered disabled, claimant must prove an inability to perform the jobs that the Commissioner lists.  Doughty, 245 F.3d at 1278 n.2 (citation omitted).

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends.  See 20 C.F.R. § 404.1520(a)(4).  Despite the shifting of burdens at step five, the overall burden rests upon claimant to prove that he is unable to engage in any substantial gainful activity that exists in the national economy.  Doughty, 245 F.3d at 1278 & n.2 (citations omitted).

---

[10] As explained by Doughty, the temporary shifting of the burden at step five to the Commissioner is a creature of judicial gloss on the Act and not mandated by the statutes.  245 F.3d at 1278 n.2 (citations omitted); see also Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995) (per curiam) (citation omitted) ("Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the [Commissioner] to show other work the claimant can do.").  "Until step five is reached, the burden is on the claimant to introduce evidence in support of [his] application for benefits."  Salazar, 372 F. App'x at 66 (citation omitted).

### III.  SCOPE OF JUDICIAL REVIEW

The scope of judicial review of a denial of Social Security benefits by the Commissioner is limited.  Lynch v. Astrue, 358 F. App'x 83, 86 (11th Cir. 2009) (per curiam) (unpublished) (citation omitted); see also Jasmatie R. v. Saul, CIVIL ACTION FILE NO. 1:19-cv-03541-AJB, 2020 WL 5406172, at *3 (N.D. Ga. Sept. 9, 2020).  "Judicial review of the administrative decision addresses three questions: (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues."  Russell v. Astrue, 742 F. Supp. 2d 1355, 1367 (N.D. Ga. 2010) (citing Fields v. Harris, 498 F. Supp. 478, 488 (N.D. Ga. 1980)); see also Sherna S. R. v. Saul, CIVIL ACTION FILE No. 1:18-cv-05893-AJB, 2020 WL 1698821, at *3 (N.D. Ga. Apr. 7, 2020) (citations omitted).  "This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner."  Russell, 742 F. Supp. 2d at 1367; see also Garrett v. Comm'r, Soc. Sec. Admin., No. 21-11749, 2022 WL 3226308, at *3 (11th Cir. Aug. 10, 2022) (per curiam) (citation omitted); Pinckney v. Comm'r of Soc. Sec., 853 F. App'x 347, 349 (11th Cir. 2021) (per curiam) (unpublished) (citation omitted); Loveless v. Comm'r, Soc. Sec. Admin., 678 F. App'x 866, 868 (11th Cir. 2017) (per curiam) (unpublished) (citation omitted); Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) (citation omitted).  If supported by substantial evidence and

proper legal standards were applied, the findings of the Commissioner are conclusive. See Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997) (per curiam) (quoting 42 U.S.C. § 405(g)); Foote, 67 F.3d at 1560 (citation omitted).

"The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding," and "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (last alteration in original) (citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Id.; see also Peterson v. Comm'r of Soc. Sec., No. 21-10086, 2021 WL 3163662, at *1 (11th Cir. July 27, 2021) (per curiam) (unpublished) (citation omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Somogy v. Comm'r of Soc. Sec., 366 F. App'x 56, 62 (11th Cir. 2010) (per curiam) (unpublished) (citations and internal marks omitted); see also Thomas-Joseph v. Comm'r of Soc. Sec., No. 21-11020, 2022 WL 1769134, at *1 (11th Cir. June 1, 2022) (per curiam) (citation omitted); Alvarez v. Comm'r of Soc. Sec., 848 F. App'x 823, 824 (11th Cir. 2021) (per curiam) (unpublished) (citation omitted). In considering the evidence in the record, this Court must consider the

11

record as a whole.  <u>Lynch</u>, 358 F. App'x at 86 (citations omitted).  It may not affirm the Commissioner's decision by referring only to those parts of the record which support the same conclusion.  <u>Tieniber v. Heckler</u>, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam); <u>see also</u> <u>John A. v. Comm'r, Soc. Sec. Admin.</u>, CIVIL ACTION FILE NO. 3:17-cv-00141-RGV, 2019 WL 994970, at *13 (N.D. Ga. Feb. 19, 2019) (citation omitted).  That is, "the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence." <u>Wooten v. Astrue</u>, No. CV 309-023, 2010 WL 2521047, at *2 (S.D. Ga. May 26, 2010) (citation omitted), adopted by 2010 WL 2521045, at *1 (S.D. Ga. June 21, 2010). "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight."  <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951).

However, if the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the evidence preponderates against the Commissioner's decision.  <u>Dyer</u>, 395 F.3d at 1210 (citation omitted); <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam) (citation omitted); <u>Ellison v. Barnhart</u>, 355 F.3d 1272, 1275 (11th Cir. 2003) (per curiam) (citation omitted); <u>Miles v. Chater</u>, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (citation omitted).  "In contrast, review of the ALJ's application of legal principles

is plenary." <u>Bailey</u>, 739 F. Supp. 2d at 1376 (citing <u>Foote</u>, 67 F.3d at 1558; <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam)).  Furthermore, "an error is harmless if it does not affect the ALJ's ultimate decision." <u>Loveless</u>, 678 F. App'x at 868 (citation omitted).

## IV.  ANALYSIS OF CASE

Claimant first argues that ALJ Boren erred by failing to include any mental limitations in his RFC determination.  [Doc. 18 at 1, 5-11].  Next, claimant argues that ALJ Boren erred in evaluating the opinion of his treating physician.  [<u>Id.</u> at 1, 12-22].  Claimant also argues that ALJ Boren erred by failing to account for his work history in assessing his credibility.  [<u>Id.</u> at 1, 22-24].  Finally, claimant argues that the Commissioner lacked constitutional authority to decide his case.  [<u>Id.</u> at 1, 24-26; Doc. 23 at 1-10].  The Commissioner responds that substantial evidence supports ALJ Boren's decision that claimant is not disabled and that the constitutional challenge is without merit.  <u>See generally</u> [Doc. 21].

## A.    <u>Commissioner's Constitutional Authority</u>

The Court first addresses claimant's contention that the Commissioner lacked constitutional authority to decide his case "as a threshold matter." <u>Montes v. Saul</u>, 19cv3039 (DF), 2020 WL 6875301, at *3 (S.D.N.Y Nov. 23, 2020).  Claimant argues that since the Commissioner is appointed by the President and confirmed by the United States Senate for a term that exceeds the President's term and cannot

be removed except for cause,[11] and Commissioner Andrew Saul ("Commissioner Saul") was not appointed by President Biden at the time the SSA adjudicated his case, the Commissioner's decision violated the separation of powers clause, and he was "deprived . . . of a valid administrative adjudicatory process."[12]  [Doc. 18 at 24-26 (citing Seila Law LLC v. C.F.P.B., 140 S. Ct. 2183 (2020); Lucia v. S.E.C., 138 S. Ct. 2044 (2018)[13])].  The Commissioner responds that, even assuming this is true,

_____

[11] Claimant did not forfeit this issue by first raising it on appeal to this Court.  See Carr v. Saul, 141 S. Ct. 1353, 1362 (2021) (holding that Ryder v. U.S., 515 U.S. 177, 182 (1995) and previous appellate courts "erred in imposing an issue-exhaustion requirement on petitioner' Appointments Clause claims.")

[12] The Commissioner points out that, because the final decision denying claimant's claim was made by an ALJ who was appointed by an acting Commissioner, who could be removed from the role at will, the removal restriction had no impact on the ALJ's appointment.  [Doc. 21 at 26, 29-30 (citing Collins v. Yellen, 141 S. Ct. 1761, 1782-83 (2021); U.S. v. Eaton, 169 U.S. 331, 343 (1898); Boger v. Kijakazi, CIVIL ACTION NO. 1:20-CV-00331-KDB, 2021 WL 5023141, at *3 n.4 (W.D.N.C. Oct. 28, 2021))].

[13] In Lucia, the Supreme Court held that because the ALJs of the Securities and Exchange Commission are "Officers of the United States" within the meaning of the Appointments Clause of the United States Constitution, they are required to be appointed to their positions by the President, a court of law, or a head of department.  138 S. Ct. at 2051, 2055 (internal marks omitted) (citing U.S. Const. art. II, § 2, cl. 1).  "After Lucia, the [SSA] applied this ruling to its [ALJs]," Cardoso v. Saul, Case No. 8:18-cv-2524-T-TGW, 2020 WL 1285016, at *8 (M.D. Fla. Mar. 17, 2020), vacated and remanded sub nom. Cardoso v. Comm'r of Soc. Sec., No. 20-11705-AA, 2021 WL 5441247 (11th Cir. June 22, 2021), and "on July 16, 2018[,] the Acting Commissioner . . . ratified the appointments of [the] ALJs [of the SSA] and approved those appointments as her own," Social Security Ruling ("SSR") 19-1p, 2019 WL 1324866, at *2 (S.S.A. Mar. 15, 2019) (footnote omitted).  "As an Officer of the United States, an ALJ for the Commissioner must be properly appointed under

a claimant seeking relief under the Appointment Clause must show that it caused actual harm, which claimant cannot do.  [Doc. 21 at 26-28, 31-32 (citing Collins, 141 S. Ct. at 1787-89; Lucia, 138 S. Ct. 2044; Decker Coal Co. v. Pehringer, 8 F.4th 1123, 1137-38 (9th Cir. 2021); Boger, 2021 WL 5023141, at *3)].

In reply, claimant clarifies that his "appeal is not an Appointments Clause challenge," but one concerning "the delegation of authority under which they adjudicated and then decided this case."  [Doc. 23 at 2-3].  Specifically, claimant argues that Commissioner Saul actually decided his case because ALJ Boren and the Appeals Council derived their authority from him.  [Id. at 4 (citing 42 U.S.C. §§ 405(b)(1), 902; HALLEX I-2-0-2(A), I-3-0-1(B); Office of the Legal Counsel, U.S. Department of Justice ("DOJ"), Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542, *7 (July 8, 2021))].  The problem here, claimant argues, is that the Appeals Council, which derived its authority from former Commissioner Saul, "issued its determination in this case only after President Biden had assumed office."  [Id. (citations omitted)].[14]

---

the Appointments Clause and only a properly appointed officer can render decisions in Social Security cases."  Rodriguez v. Comm'r of Soc. Sec., Case No: 6:18-cv-1375-Orl-GJK, 2019 WL 2234267, at *1 n.1 (M.D. Fla. May 3, 2019) (citation omitted), adopted 2019 WL 2232220, at *1 (M.D. Fla. May 23, 2019), remanded, No. 19-12779-DD, 2021 WL 3136219 (11th Cir. June 28, 2021).

[14] As these are new arguments claimant raised for the first time on reply, they are not properly before the Court.  See e.g., Black Voters Matter v. Raffensperger, 478

Claimant largely relies on the Supreme Court's decision in <u>Collins</u>, 141 S. Ct. 1761, to support his argument.  <u>See</u> [Doc. 23 at 2-7].  In <u>Collins</u>, the Supreme Court addressed the separation of powers question where Fannie Mae and Freddie Mac shareholders challenged dividend and share agreements made by the acting director of the Federal Housing Finance Agency ("FHFA"), an independent agency tasked with regulating Fannie Mae and Freddie Mac as their conservator and receiver in the wake of the 2008 housing crisis.  141 S. Ct. at 1770.  In this role, FHFA, among other things, negotiated an agreement between Fannie Mae, Freddie Mac, and the Department of Treasury that allowed the Treasury Department to provide up to $100 billion in capital in exchange for certain Fannie Mae and Freddie Mac dividends and shares.  <u>Id.</u>  The Supreme Court held:

> If the statute unconstitutionally restricts the authority of the President to remove an Acting Director, the [plaintiffs] could seek relief rectifying injury inflicted by actions taken while an Acting Director headed the Agency.  But if the statute does not restrict the removal of an Acting Director, any harm resulting from actions taken under an Acting Director would not be attributable to a constitutional violation. Only harm caused by a confirmed Director's implementation of the [ agreements] could then provide a basis for relief[.]

---

F. Supp. 3d 1278, 1303 n.15 (N.D. Ga. 2020) (citations omitted), <u>aff'd sub nom.</u> <u>Black Voters Matter Fund v. Sec'y of State for Ga.</u>, 11 F.4th 1227 (11th Cir. 2021). However, because the constitutional authority of the Commissioner is a jurisdictional issue, the Court will address the issue and claimant's arguments.

Id. at 1781.  In her concurrence, Justice Kagan discussed the implications of the ruling on the SSA as follows:

> [G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone.  That makes sense.  Presidential control does not show itself in all, or even all important, regulation.  When an agency decision would not capture a President's attention, his removal authority could not make a difference—and so no injunction should issue.

Id. at 1802 (alterations, internal citation, and internal marks omitted).

Claimant notes that "in the wake of Collins," the DOJ issued a memorandum confirming that President Biden could remove Commissioner Saul, and he immediately did so for, among other reasons, "reduced due process protections for benefits appeal hearings[.]" [Doc. 23 at 5-7 (footnote omitted)].  Claimant asserts that, because the President removed Commissioner Saul as soon as he believed he had authority to do so, the Commissioner held his office due to a constitutionally invalid provision when he decided claimant's case.  [Id.].

In this circuit, "[l]ower courts have uniformly agreed with Justice Kagan when adjudicating Social Security appeals," and "have consistently found no nexus between ALJ and AC decisions on appeal and Commissioner Saul's protected tenure of office[.]" Linnear v. Kijakazi, CV 121-098, 2022 WL 1493563, at *7 (S.D. Ga. May 11, 2022) (footnote omitted), adopted by 2022 WL 1997641 (S.D.

17

Ga. June 6, 2022).  Indeed, claimant "does not cite, and the undersigned has not found, a single instance of a District Judge reversing a Social Security decision on the basis of § 902(a)(3)'s unconstitutionality." Id. (citations omitted); see also Alicea v. Kijakazi, CASE NO. 21-60760-CIV-DIMITROULEAS/SNOW, 2022 WL 902858, at *1 (S.D. Fla. Mar. 11, 2022), adopted sub nom. Alicea v. Saul, CASE NO. 21-60760-DIMITROULEAS/SNOW, 2022 WL 898563, at *1 (S.D. Fla. Mar. 28, 2022); Vergara v. Kijakazi, Case No. 20-22964-Civ-WILLIAMS/TORRES, 2022 WL 769704, at *8 (S.D. Fla. Feb. 23, 2022) ("Plaintiff has alleged no direct action by the former tainted Commissioner himself in her denial of benefits, and no involvement—or even awareness—by the former President in the ALJ's decision.") (citation omitted), adopted sub nom. Vergara v. Comm'r of Soc. Sec., CASE NO. 20-22964-CIV-WILLIAMS, 2022 WL 767125, at *1 (S.D. Fla. Mar. 14, 2022); Tucker v. Kijakazi, CASE NO. 21-60943-CIV-DIMITROULEAS/SNOW, 2022 WL 750559, at *1 (S.D. Fla. Feb. 8, 2022), adopted by 2022 WL 742744, at *2 (S.D. Fla. Mar. 11, 2022); Vickery v. Comm'r of Soc. Sec., Case No. 5:21-cv-122-PRL, 2022 WL 252464, at *5 (M.D. Fla. Jan. 27, 2022); Perez-Kocher v. Comm'r of Soc. Sec., Case No. 6:20-cv-2357-GKS-EJK, 2021 WL 6334838, at *5 (M.D. Fla. Nov. 23, 2021) ("The ALJ's decision here was based upon an uncontested factual record and the application of established law, including case law, which generally cannot be

changed by the Commissioner."), adopted by 2022 WL 88160, at *1 (M.D. Fla. Jan. 7, 2022).

Claimant's timeline is similar to that of the claimant in <u>Linnear</u>, so he must specifically demonstrate "how the timeline creates a nexus between the removal restriction and the harm suffered."  2022 WL 1493563 at *8 (citing <u>Collins</u>, 141 S. Ct. at 1788 n.24 ("even if plaintiff 'can establish standing by showing that it was harmed by an action' taken by the officer, that 'does not mean that actions taken by such an officer are void *ab initio* and must be undone'"); <u>Simanson v. Comm'r of Soc. Sec. Admin.</u>, No. CV-20-02233-PHX-MTL, 2022 WL 1153383, at *4 (D. Ariz. Apr. 19, 2022) ("finding no 'but-for causal chain' linking the denial of benefits to the removal restriction")).  Claimant alleges that he suffered harm because he did not receive DIB, a valid adjudication, or a valid appeal, [Doc. 23 at 3], but "[t]he Court is not so convinced," <u>Linnear</u>, 2022 WL 1493563, at *8, because claimant "has not shown how President Biden's initial inability to exert control over Commissioner Saul harmed [his] DIB adjudication and outcome," <u>id.</u>, at *9 (citing <u>Kaufmann v. Kijakazi</u>, 32 F.4th 843 (9th Cir. 2022) ("holding harm from § 902(a)(3)'s unconstitutionality cannot be based on 'speculation alone'"); <u>Nichole Delores Ford v. Kilolo Kijakazi</u>, CIVIL ACTION NO. 21-1432, 2022 WL 1203731, at *6 (E.D. Pa. Apr. 22, 2022) ("plaintiff must show removal restriction caused harm, not Commissioner Saul himself")).  Instead, as in <u>Linnear</u>, claimant's:

allegations are simply too conclusory.  For example, [claimant] has not identified a particular due process violation that had an effect on [his] disability determination.

[Claimant's] appeal is primarily based on h[is] disagreement with the ALJ's view of the evidence and [claimant's] credibility.  [H]e does not allege any due process issues or other problems with the AC's later denial of review, other than the outcome.  [Claimant] also has not supplied evidence that Commissioner Saul or President Biden played a role in [his] claim, even if President Biden's regulatory philosophy or policy goals indeed stood at odds with those of the Commissioner he removed.

Id. (alterations, citations, and internal marks omitted).  As a result, remand is not warranted on these grounds.

## B.   Mental Limitations in RFC

Claimant contends that he "has at least *some* mental limitations," [Doc. 18 at 6 (emphasis omitted)], and that ALJ Boren's finding to the contrary is "internally inconsistent, not 'reasonably bridged' to the evidence, and is not, as required, based on vocational testimony evaluating the effect of mental impairments on his ability to work," [id. (emphasis omitted)].  Notably, claimant does not contend that ALJ Boren erred at Steps Two or Three, but instead challenges only the evaluation of opinion evidence in the RFC finding.  See [id. at 6-11].

Specifically, claimant argues that ALJ Boren's RFC finding—which includes no mental health impairments—is inconsistent with the opinion of consultative

examiner Ginny Kington, Psy.D. ("Dr. Kington"), who diagnosed him with other specified trauma, stressor-related disorder and major depressive disorder in partial remission and opined that he was mildly to moderately impaired in adapting to the stress of a typical work environment.   [Id. at 6-8 (citations omitted)]; see also (Tr. at 711-17).   Claimant argues that, because ALJ Boren accorded "great weight" to Dr. Kington's opinion, "he must include the established limitations in the RFC finding; if not, he must explain why they were excluded."  [Id. at 8 (citing (Tr. at 26); Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 871 (11th Cir. 2012) (per curiam) (unpublished))].   Claimant argues that ALJ Boren's failure to include any mental health limitations in his RFC is, therefore, error.   [Id. at 9 (citations omitted)].

The Commissioner disputes that ALJ Boren erred, arguing that, in addition to considering the opinion of Dr. Kington, he considered and gave significant weight to the opinions of two state agency psychological consultants—Joseph Garmon, Ph.D. ("Dr. Garmon") and E. Adamo, Ph.D. ("Dr. Adamo")—who considered Dr. Kington's report and, like Dr. Kington, concluded that claimant's mental status was unremarkable.  [Doc. 21 at 9 (citing (Tr. at 20-21, 26, 155-56, 159, 169-70, 175, 682, 685, 687, 715-16, 770-71, 777, 780-81, 784, 787, 789, 855, 867-68, 890, 922-23, 1038, 1101, 1103, 1117, 1122, 1126, 1131, 1143, 1147, 1191-92, 1255-56, 1281, 1302, 1307, 1311, 1316, 1321, 1371, 1384))].   The Commissioner notes that a

diagnosis or impairment alone does not establish the existence of a severe impairment, especially where, as here, objective findings and treatment notes do not indicate mental impairments that present severe limitations affecting claimant's ability to work.  [Id. at 10 (citing Smith v. Comm'r of Soc. Sec., 501 F. App'x 875, 879 (11th Cir. 2012) (per curiam) (unpublished); Beegle v. Soc. Sec. Admin., Comm'r, 482 F. App'x 483, 487 (11th Cir. 2012) (per curiam) (unpublished); Hutchinson v. Astrue, 408 F. App'x 324, 326 (11th Cir. 2011) (per curiam) (unpublished); Manzo, 408 F. App'x at 269; Wind v. Barnhart, 133 F. App'x 684, 690 (11th Cir. 2005) (per curiam) (unpublished); Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (per curiam))].  Claimant did not address this argument in his reply.  See [Doc. 23].

"A claimant's RFC is [his] ability to do physical and mental work activities on a sustained basis despite [his] limitations from [his] impairments."  Wilver v. Astrue, No. 8:07-CV-488-T-EAJ, 2008 WL 2824815, at *4 (M.D. Fla. July 21, 2008) (citation omitted); see also Land v. Comm'r of Soc. Sec., 494 F. App'x 47, 49 (11th Cir. 2012) (per curiam) (unpublished).  "In making this finding, the ALJ must consider all of the claimant's impairments, including those that may not be severe," Delker v. Comm'r of Soc. Sec., 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009) (citing 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945), and "the medical evidence as well as other evidence in the record," Wilver, 2008 WL 2824815, at *4

(citation omitted); see also Pettus v. Astrue, 226 F. App'x 946, 949 (11th Cir. 2007) (per curiam) (unpublished) (citations and internal marks omitted) ("[RFC] determinations are made based on all of the relevant medical and other evidence.").

Medical evidence can include "'opinions [which] are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and physical or mental restrictions.'" Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (alterations in original) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)); see also Brown v. Comm'r of Soc. Sec., 680 F. App'x 822, 824 (11th Cir. 2017) (per curiam) (unpublished) (citation omitted); Beegle, 482 F. App'x at 486; Vermillion v. Comm'r of Soc. Sec., No. 6:12-cv-1572-Orl-GJK, 2014 WL 906119, at *2 (M.D. Fla. Mar. 7, 2014) (citations omitted) ("whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments," such as his "symptoms, diagnosis, prognosis, what [he] can still do despite his . . . impairments, and [his] physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor"). "The Commissioner evaluates every medical opinion that it

receives, regardless of the source," and "[t]hus, both examining and nonexamining sources provide opinion evidence for the ALJ to consider in rendering a decision." Derrico v. Comm'r of Soc. Sec., Civil Action File No. 1:09–CV–03138–AJB, 2011 WL 1157690, at *17 (N.D. Ga. Mar. 29, 2011) (citations omitted).  However, "the mental RFC assessment 'requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B[.]'"   Hill v. Comm'r of Soc. Sec., Case No: 2:14-cv-708-FtM-CM, 2016 WL 1253579, at *8 (M.D. Fla. Mar. 31, 2016) (footnote and citation omitted).

"'The [applicable] Regulations establish a 'hierarchy' among medical opinions that provides a framework for determining the weight afforded each medical opinion.'"  Cooks v. Astrue, Civil Action No. 1:10–cv–02714–TWT–RGV, 2012 WL 567189, at *11 n.9 (N.D. Ga. Jan. 24, 2012) (quoting Belge v. Astrue, No. 3:09-cv-529-J-JRK, 2010 WL 3824156, at *3 (M.D. Fla. Sept. 27, 2010)), adopted by 2012 WL 567187, at *1 (N.D. Ga. Feb. 21, 2012).  For example, "the opinion of an examining physician is generally[ ]entitled to more weight than the opinion of a non-examining physician," Ahearn v. Comm'r of Soc. Sec., No. 6:11–cv–52–Orl–GJK, 2012 WL 619765, at *8 (M.D. Fla. Feb. 27, 2012) (citation omitted); see also Kahle v. Comm'r of Soc. Sec., 845 F. Supp. 2d 1262, 1271 (M.D. Fla. Feb. 27, 2012) (citations omitted), adopted at 1264; 20 C.F.R. § 404.1527(c)(1), but the opinions of one-time examining doctors, including doctors who perform a consultative

examination, are not entitled to special deference, although "[a]n examining doctor's opinion is, nevertheless, usually accorded greater weight than that of a non-examining physician," Langway v. Berryhill, Case No. 8:18-cv-549-T-30CPT, 2019 WL 918958, at *7 (M.D. Fla. Feb. 8, 2019) (citation omitted), adopted by 2019 WL 913283, at *1 (M.D. Fla. Feb. 25, 2019).

Here, ALJ Boren acknowledged, at Step Two, that claimant had PTSD and depression, (Tr. at 20), but the "mere presence of a condition or ailment is not enough to demonstrate the existence of a severe impairment," Kirby v. Berryhill, Case No.: 2:18-cv-01221, 2019 WL 2495755, at *7 (S.D.W. Va. May 24, 2019), adopted by 2019 WL 2500409, at *1 (S.D.W. Va. June 14, 2019); see also Antonio C. v. Saul, CIVIL ACTION FILE NO. 1:19-cv-04694-AJB, 2021 WL 1116006, at *10 (N.D. Ga. Mar. 23, 2021) (citations omitted) ("The mere diagnosis of a condition does not establish that [claimant] experienced all of the potential symptoms of the condition, nor does it say anything about the severity of the condition."). ALJ Boren concluded in relevant part:

> The claimant's medically determinable mental impairments of major depressive disorder and [PTSD], considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere. In making this finding, the undersigned has considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of

>Impairments (20 CFR, Part 404, Subpart P, Appendix 1).
>These four broad functional areas are known as the
>"paragraph B" criteria.

(Tr. at 20).  ALJ Boren then went on to address the impact that claimant's mental

impairments had on all four functional areas with specific references to the record.

<u>See</u> (Tr. at 20-21).   He found no limitations in claimant's understanding,

remembering, and applying information based on claimant's own failure to

particularize issues in this area, his daily activities, and the record.  (Tr. at 20).  ALJ

Boren concluded that claimant had mild limitations in the three other functional

areas based on these same sources of information.  (Tr. at 20-21).

When assessing claimant's RFC, ALJ Boren included no mental limitations,

<u>see</u> (Tr. at 22), and his analysis assessed claimant's mental limitations based on the

medical opinions as follows:

>As for the opinion evidence, the undersigned gives great
>weight to the opinion of [Dr. Kington], who opined that
>the claimant had only a mild limitation in his ability to
>understand and remember directions, sustain
>concentration and persistence, and interact with others,
>and mild to moderate limitation in his ability adapt to
>work stressors.  Dr. Kington supported her opinion with
>an in person examination of the claimant, including a
>mental status evaluation.  The opinion was consistent
>with the overall medical record, as well [as] the
>observations of multiple treating and emergency
>department providers throughout the period at issue.
>For example, the claimant was continually noted to be
>oriented to person, place and time, to be alert, to be in
>no acute distress, to be pleasant and to cooperate during

> examinations.  Further, . . . the record indicated that the claimant lived with others, continued to interact with others and travel during the period of alleged disability, and handled his own medical care.
>
> Similarly, the undersigned gives significant weight to the opinion of [Dr. Garmon] and [Dr. Adamo], State agency psychological consultants, who opined the claimant did not have a severe psychological impairment.  The consultants supported their opinion with a thorough review of the evidence.  Their opinion was consistent with that of the consultative examiner, Dr. Kington, who personally examined the claimant and found mostly no, or mild limitations in the claimant's functioning.  The opinion was also consistent with the overall medical record, before and after the opinion was offered, noting the claimant was alert, oriented, pleasant, cooperative and managed his own medical care.

(Tr. at 26 (citations omitted)).  Claimant contends that since ALJ Boren afforded great weight to Dr. Kington's consultative medical opinion, "he must include the established limitations in the RFC finding; if not, he must explain why they were excluded."  [Doc. 18 at 8 (citation omitted)].

As a preliminary matter, the cases cited by claimant, see [id. at 8-9], do not support his contention, since they all involved opinions of treating physicians, whose opinions "must be given substantial or considerable weight unless 'good cause' is shown to the contrary," Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citations omitted); see also Black v. Soc. Sec. Admin., Comm'r, 762 F. App'x 759, 766 (11th Cir. 2019) (per curiam) (unpublished) (citation omitted); Miller v.

27

Comm'r of Soc. Sec. Admin., 279 F. App'x 792, 792 (11th Cir. 2008) (per curiam) (unpublished) (citation omitted); Burroughs v. Massanari, 156 F. Supp. 2d 1350, 1365 (N.D. Ga. 2001) (citations omitted), adopted at 1353.  In Watkins, 457 F. App'x at 871, remand was ordered because the ALJ afforded great weight to a *treating* physician but did not incorporate certain sit/stand findings by this physician into the RFC or explain his reason for not doing so.  The other cases cited by claimant also involved consideration of a treating physician's opinion.  See [Doc. 18 at 9 (citing Winschel, 631 F.3d at 1179;[15] McGilvery v. Colvin, No. 8:12–cv–01933–T– 27EAJ, 2013 WL 5408450, at *11 (M.D. Fla. Sept. 25, 2013);[16] and Simon v. Comm'r, Soc. Sec. Admin., 1 F.4th 908, 918 (11th Cir. 2021), opinion withdrawn and superseded on reh'g, 7 F.4th 1094 (11th Cir. 2021)[17])].  Because Dr. Kington was not a treating physician, claimant's reliance on cases in which courts examined the ALJ's assessment of a treating physician's opinion is misplaced.

---

[15] Remanding because the ALJ "did not mention the treating physician's medical opinion, let alone give it 'considerable weight.'  Likewise the ALJ did not discuss the pertinent elements of the examining physician's medical opinion[.]" Winschel, 631 F.3d at 1179.

[16] Declining to remand after determining that the ALJ sufficiently discussed his reason for according less credence to the treating physician's opinions. McGilvery, 2013 WL 5408450, at *3.

[17] "Simon's primary argument on appeal is that the ALJ failed to state good cause to discount the opinions of his treating psychiatrist[.]" Simon, 1 F.4th at 918.

Additionally, ALJ Boren's opinion shows that he considered all of claimant's physical and mental impairments in combination and their limiting effects on his ability to work in some detail in assessing his RFC, <u>see</u> (Tr. at 22-27), despite the fact that he did not find all of them severe at Step Two of the sequential analysis, (Tr. at 20-21); <u>see</u> <u>Nichols v. Comm'r, Soc. Sec. Admin.</u>, 679 F. App'x 792, 797 (11th Cir. 2017) (per curiam) (unpublished) (finding no error where ALJ "explicitly stated several times that he was considering [claimant's] mental and physical impairments, both severe and non-severe, in combination" and that he had "considered the entire record, all symptoms, and the extent to which those symptoms could be accepted as consistent with all other evidence," which was "readily apparent from the ALJ's exhaustive discussion of [claimant's] various impairments and their functional limitations").

Moreover, claimant has failed to identify any evidence of limitations from the relevant period at issue that supports his claim that the RFC should have included mental limitations. <u>See generally</u> [Doc. 18]. Indeed, claimant has not demonstrated "that []he is limited to a greater extent than found by the ALJ in [his] RFC finding." <u>Tisdale v. Comm'r of Soc. Sec.</u>, Case No: 8:15-cv-848-T-DNF, 2016 WL 4975329, at *6 (M.D. Fla. Sept. 19, 2016) (rejecting the claimant's "conten[tion] that because the ALJ found that [she] had mild limitations in social functioning and concentration at step two when considering the 'paragraph B' criteria, the ALJ

was required to include these limitations in her RFC finding"); see also Tucker v. Saul, Case No. 2:18-CV-13522, 2020 WL 6255420, at *19 (D.N.J. Oct. 23, 2020) (citations omitted) (finding the ALJ "did not err in failing to include any mental limitation . . . in the RFC determination" since the record showed that claimant's "non-severe [mental impairment] . . . caused no more than mild limitations in her ability to function"). Therefore, claimant "has not met his burden of showing that his impairments are more than a slight abnormality with more than a minimal effect on his ability to perform basic work activities." Sellers v. Barnhart, 246 F. Supp. 2d 1201, 1211-12 (M.D. Ala. 2002).

ALJ Boren's analysis reflects that he did consider claimant's mild limitations identified at Step Two when making his RFC finding, (Tr. at 22, 26), and "[s]imply because the RFC does not contain additional mental limitations does not mean that the ALJ did not consider whether additional limitations were necessary," Chappell v. Comm'r of Soc. Sec., 1:18-CV-01384 EAW, 2020 WL 1921222, at *6 (W.D.N.Y. Apr. 21, 2020). Here, "there is no guesswork in understanding the ALJ's decision; first because there was no [] duty for the ALJ to express mild non-exertional limitations in terms of RFC, and second, because the ALJ offered substantial evidence during his RFC assessment addressing those mental limitations." Smith v. Berryhill, DOCKET NO. 3:17-cv-00506-FDW, 2018 WL 3447187, at *6 (W.D.N.C.

July 17, 2018).   Accordingly, the Court finds that ALJ Boren did not err in his assessment of claimant's mental limitations when determining his RFC.

## C.   <u>Weight Afforded to Treating Physician's Opinion</u>

Claimant argues that ALJ Boren failed to properly evaluate the medical opinion evidence in determining his RFC because he did not adequately consider the assessments of Julius Ajayi, M.D. ("Dr. Ajayi"), who had been claimant's treating physician for over 18 years.  [Doc. 18 at 12].  The Commissioner contends that ALJ Boren properly assessed Dr. Ajayi's opinions and provided good cause for affording them little weight.  [Doc. 21 at 11-18].

As claimant's treating physician, Dr. Ajayi's opinion was entitled to controlling weight, absent good cause for ALJ Boren to reject it.  See <u>Pinion v. Comm'r of Soc. Sec.</u>, 522 F. App'x 580, 582-83 (11th Cir. 2013) (per curiam) (unpublished) (citation omitted); <u>Forrester v. Comm'r of Soc. Sec.</u>, 455 F. App'x 899, 902 (11th Cir. 2012) (per curiam) (unpublished) (citation omitted); <u>Miller</u>, 279 F. App'x at 792 (citation omitted); <u>Graham v. Comm'r of Soc. Sec.</u>, Case No. 8:16-cv-929-T-JSS, 2017 WL 3484777, at *3 (M.D. Fla. Aug. 15, 2017) (citation omitted); <u>McKeithen v. Astrue</u>, Civil Action File No. 1:09–CV–02389–AJB, 2011 WL 1118490, at *14 (N.D. Ga. Mar. 25, 2011) (citations omitted); 20 C.F.R. § 404.1527(a)(2).  The nature of the relationship between a physician and claimant is only one factor used to determine the weight afforded a medical opinion, and other relevant factors

include "the length of the treatment relationship and the frequency of examination," the "[n]ature and extent of the treatment relationship" as it relates to the disability complaint, the consistency of the physician's opinion with the record as a whole, and the amount of relevant medical evidence which supports that physician's opinion. 20 C.F.R. § 404.1527(c). "The ALJ may 'reject the opinion of any physician when the evidence supports a contrary conclusion,'" Byrd v. Astrue, Civil Action No. 1:07cv1036-CSC, 2008 WL 3821971, at *2 (M.D. Ala. Aug. 13, 2008) (citation omitted) (quoting Bloodsworth v. Heckler, 703 F.2d 1233, 1240 (11th Cir. 1983)).  In other words, an ALJ can reject the opinion of a treating physician if there is good cause for doing so.  Graham, 2017 WL 3484777 at *3; 20 C.F.R. § 404.1527(a)(2); see also Pinion, 522 F. App'x at 582-83; Forrester, 455 F. App'x at 902; Miller, 279 F. App'x at 792; McKeithen, 2011 WL 1118490 at *14; 20 C.F.R. § 404.1527(c).

"Good cause exists if the evidence does not bolster the treating physician's opinion, the evidence supports a conclusion at odds with the opinion, or the opinion is 'conclusory or inconsistent with the [physician]'s own medical records.'" Williams v. Comm'r of Soc. Sec., 679 F. App'x 971, 972 (11th Cir. 2017) (per curiam) (unpublished) (alteration in original) (citations omitted); see also Pinion, 522 F. App'x at 583 (citation omitted); Gainous v. Astrue, 402 F. App'x 472, 474 (11th Cir. 2010) (per curiam) (unpublished) (citation omitted).  "[W]here

medical evidence does not conclusively counter the treating physician's opinion, and no other good cause is presented, the ALJ cannot discount the treating doctor's opinion[.]" Hoffman v. Astrue, Civil Action No. CV210–031, 2011 WL 690627, at *3 (S.D. Ga. Jan. 25, 2011) (citation omitted), adopted by 2011 WL 683918, at *1 (S.D. Ga. Feb. 16, 2011); see also Chambers v. Comm'r of Soc. Sec., 662 F. App'x 869, 871 (11th Cir. 2016) (per curiam) (unpublished) (citation omitted) ("[T]he more consistent an opinion is with the record as a whole, the more weight the ALJ will give to that opinion."). "If the ALJ does not give a treating physician's opinion controlling weight, '[t]he ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error.'" Miller v. Barnhart, 182 F. App'x 959, 964 (11th Cir. 2006) (per curiam) (unpublished) (alteration in original) (citations omitted) (quoting Lewis, 125 F.3d at 1440).

ALJ Boren explicitly discussed Dr. Ajayi's opinions and explained his reasons for affording them little weight:

> Dr. Ajayi provided two medial source statements opining that the claimant would be off task over 25% of the workday, would miss at least 4 days of work per month, could carry 10 pounds occasionally and no weight frequently, could sit, stand and walk in combination for less than 8 hours per workday, limitations in reaching, handling, fingering, feeling and pushing/pulling bilaterally, as well as various postural limitations such as a prohibition of climbing ladders, balancing and stooping.

Dr. Ajayi supported his opinion based on a history in which he treated the claimant for roughly 18 years as his primary care provider, to include being his attending physician during an inpatient hospitalization for cellulitis. Dr. Ajayi's limitation regarding the climbing of ladders, ropes o[r] scaffolds was consistent with the claimant's shoulder arthritis status-post a diagnostic arthroscopic shoulder surgery. However, Dr. Ajayi's overall opinion was not completely supported by his own medical documentation, appeared to be based upon subjective complaints by the claimant, and was not consistent with the overall record. For example, the opinion limited the claimant to less than 8 hours per workday due to diabetes mellitus, obstructive sleep apnea and fatigue. However, the record indicated that the claimant's obstructive sleep apnea and fatigue were effectively controlled by the use of a CPAP, and that only when the claimant with treatment was non-compliant was a notation of sleep disturbance in Dr. Ajayi's notes. The record is also void of any testing, such as sleep latency testing, for daytime sleep-related conditions. Further, Dr. Ajayi stated the claimant would miss more than 4 days of work per month in 2018, but would only be absent 3 days per month in 2020, indicating the claimant's condition had improved. The record was also void of medical appointments or conditions that demonstrated such a frequency of missed work. In addition, the opinion reduced the claimant's use of his bilateral upper extremities due to a left rotator cuff tear in 2018 and diabetes mellitus in 2020. Dr. Ajayi also opined the claimant would have to lay down 2-3 hours per workday. Dr. Ajayi's encounter notes indicated that the claimant's diabetes mellitus was without complication on multiple occasions, and fail to mention a recommendation or instruction for the claimant to lay down during the day to alleviate symptoms. While the claimant has arthritis in his left shoulder observed during his April 2017 surgery, as well as subsequent pain associated with his arthritis, physical therapy records and post-operative follow up

appointments indicated that the claimant had regained almost all range of motion in his left shoulder prior to the 2018 opinion, and there is no mention of any loss of functionality in the right upper extremity to support a limitation. In fact, a consultative examination during the period at issue demonstrated 5/5 strength in the right upper extremity, and the record demonstrated significant daily activities contrary to such restriction including travel and athletic activities.

In spite of Dr. Ajayi's status as the claimant's treating physician, the undersigned cannot assign controlling weight to his opinion because it is not well-supported by medically acceptable clinical and laboratory diagnostic testing, not well-supported by Dr. Ajayi's own documentation and are inconsistent with other substantial evidence of record.

(Tr. at 26-27 (citations omitted)).

Claimant contends that ALJ Boren did not provide sufficient explanation or good reasons for affording Dr. Ajayi's opinions "little weight" because he ignored the accepted role of credible self-reported symptoms in Dr. Ajayi's clinical observations and conclusions, was highly selective with his references to the record, and substituted his lay opinion for a medical opinion. [Doc. 18 at 16-19 (citing Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1200 (9th Cir. 2008); Marbury v. Sullivan, 957 F.2d 837, 840-41 (11th Cir. 1992) (per curiam); Tumlin v. Comm'r of Soc. Sec., Case No. 2:19-cv-00457-JLB-NPM, 2021 WL 1214880, at *10 (M.D. Fla. Mar. 31, 2021))].

The Commissioner responds that substantial evidence supports ALJ Boren's decision because it is the ALJ, not a physician, who determines a claimant's RFC, and he need not take into account medical opinions about claimant's limitations if he finds that evidence in the record is inconsistent or the physician did not bolster his opinion with objective medical findings or bases. [Doc. 21 at 11-13 (citing Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1305-06 (11th Cir. 2018) (per curiam); Denomme v. Comm'r, Soc. Sec., 518 F. App'x 875, 877-78 (11th Cr. 2013) (per curiam) (unpublished); Beegle, 482 F. App'x at 486; Wind, 133 F. App'x at 690; Crawford, 363 F.3d 1159-60; Bell v. Bowen, 796 F.2d 1350, 1353-54 (11th Cir. 1986) (per curiam); 20 C.F.R. §§ 404.1527(c), (d)2, 1546(c))]. The Commissioner asserts that Dr. Ajayi's failure to provide objective findings to bolster his opinions was, on its own, sufficient to allow ALJ Boren to give them little weight, especially in light of his conservative treatment of claimant. [Id. at 13-14 (citing Newberry v. Comm'r, Soc. Sec. Admin., 572 F. App'x 671, 671-72 (11th Cir. 2014) (per curiam) (unpublished); Crawford, 363 F.3d 1159-60; 20 C.F.R. § 404.1527(c))]. The Commissioner adds that Dr. Ajayi's reliance on claimant's subjective complaints is no substitute for objective findings. [Id. at 14 (citing Lacina v. Comm'r, Soc. Sec. Admin., 606 F. App'x 520, 528 (11th Cir. 2015) (per curiam) (unpublished); Forsyth v. Comm'r of Soc. Sec., 503 F. App'x 892, 893 (11th Cir. 2013) (per curiam) (unpublished); Crawford, 363 F.3d 1159-60; 20 C.F.R. § 404.1527(c))]. The

Commissioner further argues that the record as a whole does not support Dr. Ajayi's assessment of claimant's limitations over a 12-month period because claimant recovered from shoulder surgery within a short period and his exams and diagnostic studies do not support Dr. Ajayi's limitations. [Id. at 15 (citations omitted) (citing Barnhart v. Walton, 535 U.S. 212, 217 (2002))]. The Commissioner contends that even if a preponderance of the evidence supports Dr. Ajayi's opinions, ALJ Boren's decision must be affirmed if substantial evidence supports it. [Id. at 16 (citations omitted)].

Contrary to claimant's contention, [Doc. 18 at 16-17], ALJ Boren adhered to 20 C.F.R. § 404.1527(c) by recognizing the long treating relationship that Dr. Ajayi had with claimant as his primary care provider, (Tr. at 27), but he afforded Dr. Ajayi's opinion less weight upon finding that it was not consistent with the record as a whole or supported by relevant medical evidence, see (id.). Also, despite claimant's argument to the contrary, crafting an RFC that does not fully credit a treating physician is not an "impermissible substitution of [the ALJ's] lay opinion for that of an expert." [Doc. 18 at 18 (footnote and citation omitted)]. Under SSR 96-5p, the opinion of a treating physician on an issue reserved to the Commissioner is not entitled to controlling weight. See Lewis, 125 F.3d at 1440 (stating that the court was concerned with the medical consequences of the doctors' evaluations, not their opinions of the legal consequences of claimant's

condition); see also Saternus v. Comm'r, Soc. Sec., 662 F. App'x 883, 885 (11th Cir. 2016) (per curiam) (unpublished) (citation omitted); Moon v. Comm'r of Soc. Sec., No. 8:12-cv-02911-T-27TGW, 2014 WL 548110, at *2 (M.D. Fla. Feb. 11, 2014) (citing 20 C.F.R. § 404.1527(d)(1)) ("Whether a claimant is disabled is an issue reserved for the Commissioner and the ALJ."), adopted at *1.  The ALJ need not "give any special significance to the source of an opinion on issues reserved to the Commissioner[.]" 20 C.F.R. § 404.1527(d)(3).  However, claimant also argues that ALJ Boren's conclusion—that "Dr. Ajayi's overall opinion was not completely supported by his own medical documentation, appeared to be based upon subjective complaints by the claimant, and was not consistent with the overall record[,]" (Tr. at 27)—was based on selective references to the record.  [Doc. 18 at 19-20].  Upon consideration of the record and the reasons cited by ALJ Boren, the Court is not persuaded by claimant's argument.

First, ALJ Boren discounted Dr. Ajayi's opinion as to claimant's ability to work less than eight hours a day due to diabetes, sleep apnea, and fatigue.  (Tr. at 27 (citation omitted)).  At Step Two, ALJ Boren concluded, and claimant has not contested, that claimant's sleep apnea was not severe because, after he was prescribed a CPAP machine, he was "noted to feel much better," (Tr. at 19 (citing (Tr. at 553, 560, 564))), but "during 2019 when the claimant noted to have a recurrence of daytime sleepiness, he was less than compliant with CPAP usage[,]"

(id. (citing (Tr. at 1130))).   In determining claimant's RFC, ALJ Boren again referenced the effectiveness of the CPAP in controlling claimant's sleep apnea and fatigue and added that the record is void of sleep latency testing for daytime sleep-related conditions.  (Tr. at 27 (citing (Tr. at 553, 560, 564))).  Claimant points out that medical records within the same one-week period indicate that he experienced issues even when compliant with the CPAP.  [Doc. 18 at 19 (citing (Tr. at 1130, 1136))].  However, the portions of the record cited by ALJ Boren show that on September 3, 2009, Rajesh R. Jasani, M.D. ("Dr. Jasani"), with the Sleep Disorders Center of Gwinnett Pulmonary Group, noted that claimant "report[ed] the following sleepiness symptoms: excessive daytime somnolence, hypertension, loud snoring with disrupted sleep, morning dry mouth, nocturnal choking or gasping, non-refreshing sleep and witnessed apnea[.]"  (Tr. at 550).  Dr. Jasani diagnosed claimant with "mild to moderate sleep apnea based on symptoms, signs and associated comorbidities AND SLEEP STUDY RESULTS" noting that "ON CPAP STUDY DESATURATION WAS CORRECTED WITH USE OF CPAP ONLY."  (Tr. at 553).  Almost 10 years later, on February 7, 2019, claimant presented to Dr. Ajayi complaining of "[d]ay time sleepiness," and Dr. Ajayi noted his "history of [o]bstructive sleep apnea" and that claimant admitted "to compliance with CPAP."  (Tr. at 1134).  Dr. Ajayi diagnosed claimant with active narcolepsy and obstructive sleep apnea.  (Tr. at 1136).  However, on February 12,

2019, claimant presented to Dr. Ajayi for a "[f]ollow up on daytime sleepiness and [his diabetes mellitus.]"  (Tr. at 1130).  It was noted that claimant slept "4-6hrs a night" and that he was "[n]ot compliant with CPAP[.]"  (Id.).  Even assuming that claimant did have sleep apnea that was uncontrolled with CPAP in 2019, the Commissioner is correct that the longitudinal medical records reflect that his sleep apnea was not severe, there is no evidence that claimant experienced issues with it for longer than a year during the relevant time period, and he was not entirely compliant with prescribed treatment, which was noted to alleviate symptoms associated with it.  [Doc. 21 at 15 (citations omitted) (citing Barnhart, 535 U.S. at 217 (holding claimant's impairments and inability to work must last for continuous period of at least twelve months)].

Regarding claimant's musculoskeletal impairments, although ALJ Boren recognized that "claimant has arthritis in his left shoulder observed during his April 2017 surgery, as well as subsequent pain associated with his arthritis," he noted that "physical therapy records and post-operative follow up appointments indicated that claimant had regained almost all range of motion in his left shoulder prior to the 2018 opinion, and there is no mention of any loss of functionality in the right upper extremity to support a limitation."  (Tr. at 27).  ALJ Boren added that "a consultative examination during the period at issue demonstrated 5/5 strength in the right upper extremity, and the record demonstrated significant

daily activities contrary to such restriction including travel and athletic activities."
(Id. (citing (Tr. at 682, 728, 839; 1367-96))).

Reviewing the portions of the record cited by ALJ Boren reveals that the majority of limitations (and treatment) related to claimant's musculoskeletal system were during a period of less than one year following a 2017 motor vehicle accident. See e.g., (Tr. at 682, 719-29).  After this accident, an MRI of claimant's left shoulder taken on February 3, 2017, revealed "[h]igh-grade partial tear of the long head of the biceps[,]" "previous biceps tendon repairs with capsular defect[,]" "[u]ndersurface tear involving superior glenoid labrum[,]" and tendinosis[.]"  (Tr. at 1387).  On February 8, 2017, claimant reported "constant" pain of a "7/10" and was diagnosed with strain of the muscles and tendons in the left rotator cuff and pain in the left shoulder, and prescribed physical therapy and administered a steroid injection, in addition to the hydrocodone-acetaminophen he was already prescribed.  (Tr. at 1390-91).  On March 29, 2017, claimant stated that an injection helped for a day, but he still had "intermittent[,]" "throbbing, achy" pain of a 3/10 on his left shoulder some of which "improved with therapy but he still ha[d] anterior pain."  (Tr. at 1383).  On exam, claimant had "good range of motion and positive impingement signs, some tenderness [ ] in the a.c. joint or . . . anteriorly over the biceps tendon sheath."  (Tr. at 1384).

41

After a left shoulder arthroscopy, subacromial decompression, distal clavicle excision, rotator cuff repair, and extensive debridement of the glenohumeral joint, claimant was also diagnosed with a rotator cuff tear at the musculoskeletal junction of the supraspinatus and infraspinatus.  (Tr. at 1381). After this procedure, on April 26, 2017, claimant reported "intermittent[,]" "achy" pain of "4/10" with "improving" symptoms and, on examination, his range of motion was "appropriate[.]"  (Tr. at 1378-79).  On May 17, 2017, claimant reported "intermittent[,]" "achy" pain of "5/10" with "improving" symptoms and that his "shoulder [was] doing well, but he [was] still hurting some."  (Tr. at 1375). However, on examination, claimant's range of motion was "appropriate without excessive stiffness," and the course of treatment was for claimant to "continue with a shoulder immobilizer until he [was] 6 weeks postop and then . . . initiate physical therapy," and he was to "return in 3 weeks prior to his trip to Jamaica."  (Tr. at 1376).  On June 7, 2017, claimant reported "constant" pain of "4/10" with "appropriate" range of motion but plans to continue physical therapy while in Jamaica.  (Tr. at 1373-74).  On July 12, 2017, claimant reported "achy[,]" "constant[,]" pain of "4/10" despite stating "that he [was] doing well[,]" "symptoms [were] improving[.]"  (Tr. at 1370-71).  On examination, claimant's range of motion was "improving appropriately[,]" but it was noted that "[s]upervised physical therapy [was] medically necessary for him to continue to

regain his range of motion and strength and obtain optimal results of surgery and avoid need for further surgery if his range of motion does not continue to improve."  (Id.).  The record indicates that claimant continued to improve with physical therapy as on July 13, 2017, a physical therapist at Pro Performance Physical Therapy noted that claimant "report[ed] that his shoulder [was] feeling 'even better than last visit.'  He stated that his physician ha[d] cleared him for strength training" and was assessed as having "no onset of [left] shoulder pain." (Tr. at 839).  On August 23, 2017, the severity of claimant's left shoulder pain was "2/10" and "intermittent[,]"with "almost full" range of motion, "improved" strength, and "very minimal dyskinesia[.]"  (Tr. at 1367-68).  Upon review of the portions of the record cited by ALJ Boren, the Court concludes that ALJ Boren clearly stated the reasons for his findings that are supported by substantial evidence and claimant has not identified evidence showing that his musculoskeletal impairments persisted for more than a year.  [Doc. 21 at 17 (citations omitted)].

As for claimant's diabetes, ALJ Boren discounted Dr. Ajayi's opinion because "encounter notes indicated that the claimant's diabetes mellitus was without complication on multiple occasions, and fail to mention a recommendation or instruction for the claimant to lay down during the day to alleviate symptoms." (Tr. at 27 (citing (Tr. at 1116-75, 1300-57))).  Claimant argues

that ALJ Boren ignored "numerous notations that his diabetes mellitus was classified as uncontrolled and the numerous times his blood sugar was abnormally high." [Doc. 18 at 20 (citation omitted)]. However, an ALJ need not "recount every last finding" in declining to give controlling weight to a treating physician's opinion. Hammond v. Astrue, No. CV411-045, 2012 WL 930341, at *4 (S.D. Ga. Mar. 19, 2012), adopted by 2012 WL 1205094, at *1 (S.D. Ga. Apr. 11, 2012). Here, ALJ Boren specifically noted that it "continued to be uncontrolled but without complication," (Tr. at 24 (citing (Tr. at 1300-02))), and there is substantial evidence in the record to support his finding.

Finally, ALJ Boren noted that Dr. Ajayi's treatment notes did not include the same limitations—of medical appointments or conditions that demonstrated missing 3 to 4 days of work a month and needing to lay down 2 to 3 hours per workday—as his assessment. (Tr. at 27). Claimant argues that "[t]he absence of a physician's instruction or work restriction from treatment notes does not necessarily impact the credibility of the physician's opinion that the instruction or restriction would affect the claimant's ability to work." [Doc. 18 at 21 (alteration in original) (footnote and internal marks omitted) (quoting Stoker v. Saul, 833 F. App'x 383, 387 (4th Cir. 2020) (per curiam) (unpublished))]. While this may be true, this does not mean that there was an absence of substantial evidence supporting ALJ Boren's decision to afford less weight to Dr. Ajayi's opinions. See

44

e.g., Poplardo v. Astrue, No. 3:06-cv-1101-J-MCR, 2008 WL 68593, at *11 (M.D. Fla. Jan. 4, 2008) (internal marks omitted) (quoting Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam)) ("While it is incumbent upon this Court to view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision to ascertain whether the ALJ's decision is based on substantial evidence, it is also important to refrain from re-weighing the evidence."); see also Stroman v. Astrue, No. 08–22881–CV, 2009 WL 3669640, at *4 (S.D. Fla. Nov. 4, 2009) (explaining that the court may not "substitute its judgment for that of the ALJ").  As previously discussed, ALJ Boren clearly stated adequate grounds for his decision, Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam), such that the undersigned can "build an accurate and logical bridge from the evidence to his conclusion[,]" Ricks v. Astrue, No. 3:10-cv-974-TEM, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (citation omitted).  That is enough to satisfy the substantial evidence standard and precludes this Court from disturbing ALJ Boren's findings.  See Foote, 67 F.3d at 1562; see also Dyer, 395 F.3d at 1210.

## D.   Consideration of Claimant's Subjective Symptoms

Claimant contends that ALJ Boren's assessment of his subjective symptoms is deficient for the same reasons as those discussed with respect to his evaluation of Dr. Ajayi's opinion and because "his exemplary work history, demonstrating an uninterrupted 34-year work history prior to his alleged onset of disability,"

"should have informed the ALJ's credibility finding[.]"[18]   [Doc. 18 at 23-24 (citations omitted) (citing (Tr. at 407-09))].   The Commissioner responds that "[s]ubstantial [e]vidence [s]upports the [ALJ's] [f]inding that [claimant's] [s]tatements [c]oncerning the [i]ntensity, [p]ersistence, and [f]unctionally [l]imiting [e]ffects of his [a]lleged [s]ymptoms [w]ere [n]ot [e]ntirely [c]onsistent with the [m]edical [e]vidence and [o]ther evidence."   [Doc. 21 at 18 (emphasis omitted)].

The Commissioner contends that "[o]bjective examination findings and diagnostic studies do not indicate that [claimant's] condition was of disabling severity, particularly for any consecutive twelve-month period."   [Id. at 20 (citations omitted)].   More specifically, the Commissioner points to claimant's "activities, as discussed by the ALJ, including his work after the alleged onset date," [id. at 21 (citations omitted) (citing (Tr. at 18, 20-21))], and his "routine and conservative treatment other than shoulder surgery," [id. (citations omitted)

---

[18] "On March 16, 2016, [SSR] 16-3p superseded SSR 96-7p" and "eliminate[d] the use of the term 'credibility' and clarifie[d] 'subjective symptom evaluation is not an examination of an individual's character.'"   Larsen v. Berryhill, CV 118-038, 2019 WL 1590607, at *3 n.2 (S.D. Ga. Mar. 19, 2019) (citations omitted), adopted by 2019 WL 1586759, at *1 (S.D. Ga. Apr. 12, 2019).   However, "while SSR 16-3p eliminates the term 'credibility' from the analysis and replaces it with 'subjective symptom evaluation,' SSR 16-3p does not alter what the ALJ must consider in evaluating a claimant's symptoms," Sheehan v. Comm'r of Soc. Sec., Case No: 2:16–cv–353–FtM–MRM, 2017 WL 4231104, at *13 (M.D. Fla. Sept. 25, 2017) (citations omitted).

(citing (Tr. at 19-21, 23-26))].  The Commissioner adds that the ALJ is not required to discuss a claimant's work history, [id. at 23 (citations omitted) (citing Rios v. Acting Comm'r of Soc. Sec., No. 8:16-CV-152-T-PDB, 2017 WL 4216467, at *10 (M.D. Fla. Sept. 22, 2017); Mahon v. Comm'r of Soc. Sec., Case No: 8:16-cv-1462-T-JSS, 2017 WL 3381714, at *10 (M.D. Fla. Aug. 7, 2017); Carson v. Colvin, CV416-083, 2017 WL 360925, at *5 n.6 (S.D. Ga. Jan. 6, 2017), adopted by 2017 WL 354859, at *1 (S.D. Ga. Jan. 24, 2017))], and, even if it were required, the failure to do so was harmless, [id. at 24 (citation omitted) (citing Shinseki v. Sanders, 556 U.S. 396, 409 (2009); N.L.R.B. v. Wyman-Gordon Co., 394 U.S. 759, 766 n.6 (1969); Sanchez v. Comm'r of Soc. Sec., 507 F. App'x 855, 856 (11th Cir. 2013) (per curiam) (unpublished))].

Where claimant alleges disability due to subjective symptoms, medical signs or laboratory findings must show there is a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged.  See 20 C.F.R. § 404.1529(a).  To do this, a claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. See id.; Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). If medical

evidence demonstrates the existence of such a medical impairment, then the ALJ will consider the subjective allegations of pain and other symptoms along with all of the other evidence. See 20 C.F.R. § 404.1529(a).

The ALJ considers objective medical evidence and information from the claimant and treating or examining physicians, as well as other factors such as evidence of daily activities, the frequency and intensity of symptoms, any precipitating and aggravating factors, medication taken and any resulting side effects, and any other measures taken to alleviate the claimant's pain or other symptoms. See 20 C.F.R. § 404.1529(c)(2), (3); SSR 16-3p (S.S.A. Oct. 25, 2017), 2016 WL 1119029, at *4-6; see also Dyer, 395 F.3d at 121-12.  When evidence documents an impairment that could reasonably be expected to produce the symptoms alleged by a claimant, the ALJ then evaluates the intensity and persistence of the symptoms to determine how the symptoms limit the claimant's capacity for work. See 20 C.F.R. § 404.1529(c)(1); see also Foote, 67 F.3d at 1561.

ALJ Boren found in relevant part:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his . . . symptoms, they are inconsistent because they are not consistent with his actions nor the medical evidence contained in the record. For example, the claimant testified that he was unable to sit or stand for periods of time, and was continually tired. However, the record also noted the claimant exercised regularly.  Further, the claimant traveled from his home to Atlanta, then Miami and Cancun in December 2017,

48

indicating an ability to sit and stand in excess of that alleged. In addition, the claimant stated that he had trouble holding items, standing, walking and lifting his arms. However, the claimant informed the emergency department that he had no trouble with stairs, no trouble bathing, no difficulty doing errands, no difficulty concentrating and no difficulty seeing. The claimant was also cleared for weight training following his arthroscopic surgery, and noted that he looked forward to returning to play basketball and tennis, as well returning to the gym. The claimant's allegations are also contrary to his primary care provider's notations that his diabetes mellitus, although uncontrolled, is without complication, as well as the claimant's denials of neuropathy, tingling or issues such as diabetic retinopathy. The claimant's medical history, from his primary care provider of over 18 years, also failed to indicate narcolepsy, nor are there annotations of an inability to handle objects in the record, as alleged by the claimant.

(Tr. at 25-26 (citations omitted)).

The Commissioner is correct; there is no absolute requirement—under either SSR 16-3p or 20 CFR 404.1529—for ALJ Boren to discuss claimant's work history. [Doc. 21 at 22-23 (citations omitted)]. Indeed, in the case cited by claimant, [Doc. 18 at 23 (citing Lafond v. Comm'r of Soc. Sec., No. 6:14-cv-1001-Orl-DAB, 2015 WL 4076943, at *26-27 (M.D. Fla. Jul. 2, 2015))], "the Court did not remand the ALJ's disability determination solely on that basis," but "[i]nstead, the court remanded the ALJ's decision on its conclusion that the ALJ's [] assessment [as to claimant's subjective complaints of pain], as a whole, was not based on substantial

evidence[,]" <u>Sickmiller v. Saul</u>, Case No. 8:19-cv-3087-SPF, 2021 WL 1186846, at *8 (M.D. Fla. Mar. 20 2021) (footnotes and citation omitted).

Claimant does not explicitly challenge the other bases for ALJ Boren's assessment of the intensity and persistence of claimant's reported symptoms except to incorporate his arguments with respect to ALJ Boren's weighing of Dr. Ajayi's opinion by reference. [Doc. 18 at 22-23 (asserting that "the issue of the weighing of opinion evidence, determining an RFC, and the evaluation of whether a claimant's self-described limitations are consistent with the record . . . are inextricably intertwined because they are based on the same facts and judgments")]. As the undersigned has previously addressed them, he will not revisit them at length here except to reiterate that subjective complaint evaluations are the province of the ALJ, and, so long as the ALJ's finding complies with the procedure set forth by 20 C.F.R. § 404.1529(c), a court may not disturb it. <u>See Moore</u>, 405 F.3d at 1212. Here, the undersigned previously discussed that ALJ Boren looked at the objective medical records, daily activities, and precipitating and aggravating factors, such as non-compliance with the CPAP and a car accident. (Tr. at 25-27 (citations omitted)). In short, ALJ Boren reviewed the relevant evidence in the record and specifically referenced it in his evaluation of the 20 C.F.R. 404.1529(c) factors when he made "[a] clearly articulated credibility finding with substantial supporting evidence in the record [which] will not be

disturbed by [this] reviewing court." <u>Foote</u>, 67 F.3d at 1562; <u>see also</u> <u>Dyer</u>, 395 F.3d at 1210.

## VI.  CONCLUSION

For the reasons stated, ALJ Boren's decision denying claimant's application for DIB is **AFFIRMED**.

**IT IS SO ORDERED**, this 22nd day of September, 2022.

_Russell G. Vineyard_
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE